Dick A. Semerdjian, Esq.  (SBN 123630)
Owen M. Praskievicz, Esq. (SBN 292439)
SCHWARTZ SEMERDJIAN BALLARD & CAULEY LLP
101 W. Broadway, Suite 810
San Diego, California 92101
Telephone:  (619) 236-8821
Facsimile:   (619) 236-8827
Attorneys for Plaintiff JBH INVESTMENTS, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JBH INVESTMENTS, INC., a California corporation, formerly Realty Executives, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>REALTY EXECUTIVES INTERNATIONAL, INC., an Arizona corporation; and EXECU*SYSTEMS, INC., an Arizona corporation,<br><br>Defendants. | Case No.    **'14CV2690 AJB NLS**<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JBH INVESTMENTS, INC. ("JBH"), a California corporation, for

its claims for relief against Defendants REALTY EXECUTIVES

INTERNATIONAL, INC. ("REI"), an Arizona corporation, and

EXECU*SYSTEMS, INC. ("Execu*Systems"), an Arizona corporation

(collectively hereafter "Defendants"), alleges as follows:

## I.    NATURE OF ACTION AND RELIEF SOUGHT

1.    JBH is the licensor and owner of all state and federally registered

trademark rights related to REALTY EXECUTIVES (the "Service Mark"), a

prominent brand in the real estate brokerage industry.

///

2. On April 1, 1987, JBH conditionally assigned exclusive use and control of the Service Mark within the United States to Defendant Execu*Systems in exchange for royalty payments as outlined in an Agreement for Sale of Service Marks ("Agreement.") A true and correct copy of the Agreement is attached as Exhibit A to the Complaint.

3. JBH is informed and believes that Execu*Systems is owned by Defendant REI, and together Execu*Systems and REI utilized the Service Mark pursuant to the Agreement. REI was explicitly referenced as an assignee under the Agreement by and through two subsequent amendments to the Agreement in 1996 and 2011. True and correct copies of the First and Second Amendments are attached as Exhibit B and C, respectively, to the Complaint.

4. Pursuant to Section VII of the Agreement entitled Termination, if outstanding royalties remain unpaid for a period of longer than thirty (30) days, JBH may notify Defendants of their breach of the Agreement, after which Defendants have sixty (60) days to cure the payment deficiency. If the Defendants does not cure their deficient payments, the rights granted under the Agreement are terminated and the Service Mark is restored to JBH.

5. This action arises out of Defendants' failure to make a timely royalty payment of $55,000 on August 1, 2014, pursuant to the Agreement, an amount that became late after a ten-day grace period on August 10, 2014.

6. Prior to filing this action, a representative of JBH notified Defendants of its breach of the Agreement on August 20, 2014, after Defendants failed to make their royalty payment on August 10, 2014. A true and correct copy of the notice of breach is attached as Exhibit E to this Complaint.

7. Defendant REI acknowledged that their failure to pay on August 10, 2014, was to start the 90-day "clock ticking" on termination. A true and correct copy of this acknowledgement is attached as Exhibit F, reflecting an email dated August 13, 2014, from David C. Tedesco, the majority owner of REI. Also attached

as Exhibit G is a letter from REI dated July 11, 2014, establishing Tedesco's ownership interest in REI.

8.    Defendants have not made any royalty payments on the Agreement since their August 10, 2014, breach, including the payments due in September, October, and November.  In total, the amount due and owing *not including interest and late fees* is $220,000.

9.    By filing this action, JBH seeks to obtain all outstanding royalty fees due and owing by Defendants and to enjoin Defendants from any further use of the Service Mark pursuant to the termination clause of the Agreement.  JBH further seeks damages for Defendants' ongoing and unlawful use of the Service Mark now that the Agreement is terminated.  JBH also requests Defendants draft and send a letter to the U.S. and Foreign Patent Offices affirmatively releasing the Service Mark to JBH.

## II.    JURISDICTION AND VENUE

10.    This Court has personal jurisdiction over Defendants and the First Claim for Relief for Breach of Contract pursuant to Section VII of the Agreement which states that "disputes about performance of the terms of this Agreement or termination of this Agreement shall be referred to the Federal Courts of the United States."  By contracting with JBH, the owner of the Service Mark and a California corporation located in San Diego, California, Defendants have established the minimum contacts with California necessary for the Court to establish personal jurisdiction as prescribed in *International Shoe v Washington*, 326 US 310 (1945).

11.    This Court has subject matter jurisdiction over this trademark action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), as well as §§ 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), as amended, and the statutory and common laws of the State of California.

12.    This Court also has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 because (1) there is complete diversity between the

1  plaintiff and defendants: Plaintiff JBH is a California corporation with its principal
2  place of business in California and Defendants REI and Execu*Systems are Arizona
3  corporations with their principal places of business in Arizona and (2) the amount in
4  controversy exceeds $75,000.

5      13.    This Court is an appropriate venue for this dispute pursuant to 28
6  U.S.C. § 1391(b) and (c) as a substantial part of the events giving rise to JBH's
7  claims against Defendants occurred in the Southern District of California, including
8  the Agreement and the First and Second Amendments.

9  ### III.    PARTIES

10      14.    JBH is a California corporation with its principal place of business in
11  San Diego, California. JBH is the licensor and owner of the Service Mark.

12      15.    JBH is informed and believes Execu*Systems is an Arizona
13  corporation with its headquarters located at 4427 North 36th Street, Phoenix, AZ
14  85018. JBH is informed and believes that Execu*Systems is wholly owned by REI.

15      16.    JBH is informed and believes REI is an Arizona corporation with its
16  headquarters located at 8324 East Hartford Drive, Suite 100, Scottsdale, AZ 85255.
17  JBH is informed and believes that REI is the owner of Execu*Systems.

18  ### IV.    COMMON ALLEGATIONS FOR ALL CLAIMS

19      17.    JBH is the owner of an active federal trademark registration for the
20  "REALTY EXECUTIVES" mark, Registration Number 1,037,111 registration date
21  March 30, 1976, as well as nationwide common law trademark rights for the
22  "REALTY EXECUTIVES" mark.

23      18.    On April 1, 1987, JBH conditionally assigned exclusive use and control
24  of the Service Mark within the United States to Defendant Execu*Systems in
25  exchange for royalty payments as outlined in the Agreement.

26      19.    On June 28, 1996, JBH and Defendants entered into the First
27  Amendment to the Agreement, titled "Settlement Agreement" pursuant to an action
28  filed in the U.S. District Court for the Southern District of California styled *Realty*

1  *Executives, Inc., v. Execu\*systems, Inc., et al.*, Case No. 92-0240-NAJ (POR).  The
2  First Amendment further clarified other outstanding issues under the Agreement,
3  modifying the Agreement in part.

4      20.    The First Amendment was entered into subsequent to a judgment and
5  order by the Honorable Napolean A. Jones, Jr., by which Judge Jones upheld the
6  enforceability of the Termination clause in the Agreement and subsequently JBH's
7  ownership rights to the Service Mark and reiterated should the Agreement be
8  terminated.  A true and correct copy of Judge Jones' Order establishing that JBH
9  remains the owner of the Service Mark in the event of termination under the
10  Agreement is attached as Exhibit H.

11      21.    On or about April 11, 2011, JBH and Defendants entered into the
12  Second Amendment to the Agreement subsequent to JBH's acceptance of a
13  Promissory Note made by REI for royalty payments in arrears.  The Promissory
14  Note was resolved by the terms of the Second Amendment, which modified the
15  royalty payment terms of the Agreement by, in part, increasing the late penalty from
16  six percent to ten percent.

17      22.    Pursuant to Section VII of the Agreement entitled Termination, which
18  was not modified by either the First or Second Amendment, if outstanding royalties
19  remain unpaid for a period of longer than thirty (30) days, JBH shall notify
20  Defendants of their breach of the Agreement, after which Defendants have sixty
21  (60) days to cure the payment deficiency.  If the Defendants does not cure their
22  deficient payments, the rights granted under the Agreement are terminated and the
23  Service Mark is restored to JBH.

24      23.    Prior to filing this action, a representative of JBH notified Defendants
25  of its breach of the Agreement on August 20, 2014, after Defendants failed to make
26  their royalty payment on August 10, 2014.  Defendant REI acknowledged that their
27  failure to pay on August 10, 2014, was to start the 90-day "clock ticking."

28

24.   As of the date of this Complaint, JBH has not received royalty payments from Defendants for the months of August, September, October, and November, an amount which totals no less than $220,000 and which will be established at trial.

## V.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR BREACH OF CONTRACT

25.   The allegations of paragraphs 1 through 21 above are repeated and realleged as though set forth fully herein.

26.   JBH and Defendants reached an Agreement on April 1, 1987, which required Defendants to make monthly royalty payments related to Defendants' use of the Service Mark.

27.   JBH performed all duties under the Agreement.

28.   Defendants breached the Agreement with JBH on August 10, 2014, by not making their monthly royalty payment.

29.   Defendants continue to breach the Agreement by not making monthly royalty payments pursuant to the Agreement.

30.   In reliance on the Agreement and Defendant' representations, JBH has been damaged in an amount to be determined at trial as of the date of this Complaint, which includes interest and late penalties.  These damages continue to increase for each month Defendants fail to pay under the Agreement.

### SECOND CLAIM FOR TRADEMARK INFRINGEMENT

31.   The allegations of paragraphs 1 through 27 above are repeated and realleged as though set forth fully herein.

32.   This is a claim for trademark infringement pursuant to 15 U.S.C. § 1051, *et seq.*

33.   Defendants' acts after the date of this filing, as alleged above, have caused damage and irreparable injury to JBH in an amount to be determined at trial. Said acts will result in further damage and irreparable injury to JBH if Defendants

are not restrained by this Court from further violation of the JBH's rights, for which JBH has no adequate remedy at law.

## VI.    PRAYER FOR JUDGMENT

WHEREFORE, JBH prays for judgment against Defendant as follows:

### First Claim of Relief

1.    That Defendants pay to JBH all outstanding royalty payments and corresponding interest and late penalties owed to Plaintiff pursuant to the Agreement.

### Second Claim of Relief

1.    That the JBH's Service Mark be deemed valid and willfully infringed by Defendant in violation of 15 U.S.C. § 1114, *et seq.* for any use of the Service Mark after the date of this filing;

2.    That Defendants be required to account to JBH for any and all profits derived by it by reason of Defendants' acts complained herein;

3.    The Defendants be ordered to pay to JBH all damages which JBH has sustained as a consequence of the acts complained herein, subject to proof at trial;

4.    That such damages and profits be trebled and awarded to JBH pursuant to 15 U.S.C. § 1117;

5.    That Defendants be ordered to pay to JBH's attorneys' fees and costs; and

6.    That Defendants, their agents, servants, employees and attorneys, and all those persons in active concert or participation with them, be forthwith preliminarily and thereafter permanently enjoined, pursuant to 15 U.S.C. § 1116, from:

        a.    Manufacturing, selling distributing, marketing, advertising, licensing or authorizing the manufacture or sale of any products or marketing and advertising materials bearing the Service Mark "Realty Executives" or "REI";

b.    Otherwise infringing JBH's trademark rights; and

c.    Causing a likelihood of confusion in the public as to the source or endorsement of Defendants' services products.

### Third Claim of Relief

1.    That Defendants draft and send a letter to the U.S. and Foreign Patent Offices affirmatively releasing the Service Mark to JBH.

### On All Claims of Relief

1.    That Defendants be directed to file with this Court and serve on JBH within thirty (30) days after the service of any injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with such injunction;

2.    That JBH be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, CAL. BUS. & PROF. CODE § 17200, *et seq.*, and as otherwise provide by law; and

3.    That the Court award such other and further relief as it may deem just.


Dated: November 12, 2014                SCHWARTZ SEMERDJIAN
                                        BALLARD & CAULEY LLP


                                        By:
                                            /s/ Dick A. Semerdjian
                                            Dick A. Semerdjian
                                            Owen M. Praskievicz
                                            Attorneys for Plaintiff

# **DEMAND FOR JURY TRIAL**

Plaintiff JBH INVESTMENTS, INC. hereby demands trial by jury in this action.

Dated:  November 12, 2014

SCHWARTZ SEMERDJIAN
BALLARD & CAULEY LLP

By:
/s/ Dick A. Semerdjian
Dick A. Semerdjian, Esq.
Attorneys for Plaintiff

# EXHIBIT A



## AGREEMENT FOR SALE OF SERVICE MARKS

Realty Executives, Inc., hereinafter "Seller," a California corporation with its principal place of business located at 5933 Balboa Avenue, San Diego Ca. 92111, and Execu*Systems, Inc., hereinafter "Buyer," a corporation of the State of Arizona with its principal place of business at 4427 North 36th Street, Phoenix, Arizona, 85018, agree as follows:

### I. EFFECTIVE DATE: CONSIDERATION

1.1 The effective date of this agreement shall be April 1, 1987.

1.2 The parties enter into this Agreement in consideration of the mutual covenants and terms herein expressed.

### II. BACKGROUND

2.1 Seller owns exclusive state and federal registration rights to the mark REALTY EXECUTIVES and RE REALTY EXECUTIVES and is willing to transfer all such rights to buyer by means of a conditional assignment, subject only to the terms of this agreement in exchange for royalty payments, and reserving only a right of seller to continue using the mark in conjuction with its business operated at 5933 Balboa Avenue, San Diego, California 92111.

2.2 Buyer desires to acquire exclusive use and control of all rights to the mark REALTY EXECUTIVES and RE REALTY EXECUTIVES for real estate brokerage services and for franchising services throughout the United States, and is willing to purchase such rights from seller.

### III. GRANT

3.1 Seller hereby grants the exclusive right to use the registered service marks REALTY EXECUTIVES and RE REALTY EXECUTIVES in conjuction with real estate brokerage services and franchising services throughout all fifty states of the United States of America, including all rights in the following registrations:

a. United States Service Mark Registration No. 1.037,111 issued on March 30, 1976 for the mark REALTY EXECUTIVES;

b. United States Service Mark Registration No. 1,186,010 issued on November 3, 1981 for the mark RE REALTY EXECUTIVES depicted in a distinctive design;

c. State of California Service Mark Registration No. 14955 issued by the California Secretary of State on October 13, 1981 for the mark R.E.;

1

      **d.**   State of California Service Mark Registration No. 14,889 issued by the California Secretary of State on October 13, 1982 for the mark REALTY EXECUTIVES.

    3.2  To implement the exclusive sale of service mark rights granted in this paragraph, Seller agrees to execute any documents reasonably deemed by Buyer to be necessary to formalize, document, and record the grant of exclusive rights recited in Paragraph 3.1.  If requested by Buyer, Seller specifically agrees to execute any consent forms required to enable Buyer's use of the marks in California.

    3.3   Upon execution of this Agreement, Seller shall simultaneously execute notarized assignments of the identified trademark registrations to Buyer.   Said assignments shall not be recorded by Buyer and the original shall be held by Seller's attorney with fascimiles delivered to Buyer.  On the third anniversary of the effective date of this Agreement if Buyer has performed all of the terms of this Agreement to that date, the assignment shall be released to Buyer and Buyer shall have an unconditional right to record the assignments in its own name. Should this Agreement clearly fail by reason of Buyer's breach before the third anniversary, specifically should Buyer fail to pay royalty payments when due, or abandon the mark, or fail to use good faith efforts to market and franchise under the mark, the assignment documents shall be declared void and this Agreement shall be deemed to be a revocable license.  In every other respect both before and after the third anniversary of the effective date of this Agreement, Buyer shall be entitled to consider and represent itself to be the Assignee of the marks.

    3.4  Buyer agrees that it will at all times operate under the grant of exclusive rights as an active national franchising program for real estate offices using the marks REALTY EXECUTIVES.  Buyer also agrees to use its best efforts to promote the establishment of franchisees and franchise programs in every state of the United States as practical and to encourage its existing franchisees to convert to the REALTY EXECUTIVES franchising program.  As further consideration for the royalty agreement and representations of Buyer, Seller assigns all current licensing or franchise agreements under which it has a right to income or control of any franchised offices to Buyer, including the license agreement/franchise agreement executed on January 1986 between Seller and RE San Carlos Associates and the license agreement/franchise agreement executed on November 17, 1986 between Seller and RE Las Vegas Associates, together with all rights to income under those agreements. Buyer agrees to use its best efforts to maintain and support the assigned contracts on the same or similar terms recited therein and to provide them with the rights and benefits that are offered to any of its

Mar 09,87 16:11 CHARMASS    & HOLZ SAN DIEGO CALIFOF    1-619-569-4048    P.05

regular franchisees.   Seller will use its best efforts to effect
a  prompt  transition  of the contracts to Buyer's control  and
inclusion   in its franchise program and to execute any  necessary
documentation therefor.

### IV.  WARRANTY OF OWNERSHIP AND CLEAR TITLE

4.1   Seller  warrants and represents that  it  owns  clear,
unencumbered,  complete  and exclusive title to the  federally
registered  service marks recited in Paragraphs 3.1.a  and  3.1.b
and  to the state service mark registration recited in  Paragraph
3.1.c,   that   each  of  said  registered  marks  is  valid  and
enforceable, and that through continuous and exclusive use of the
mark  REALTY·EXECUTIVES in California,  Seller and its  predessor
have  developed and presently own exclusive common law rights  in
the mark REALTY EXECUTIVES.

4.2.A   Except  as disclosed  in  Paragraph  4.2.B.,  Seller
warrants  and represents that neither it nor any of its officers,
directors  or shareholders have engaged in any of  the  following
conduct  regarding  the service mark rights recited in  Paragraph
3.1:

a.   Sold or transferred any rights to the mark  REALTY
EXECUTIVES;

b.   Mortgaged,  encumbered  or  placed liens upon  any
rights in the mark REALTY EXECUTIVES;

c. Granted exclusive or non-exclusive rights, franchise
rights,  or  covenants not to sue relating to the  mark  REALTY
EXECUTIVES; and

d.   Become  involved  in  any  litigation  or  dispute
involving the rights of Seller to the marks REALTY EXECUTIVES and
RE REALTY EXECUTIVES.

4.2.B  Seller hereby discloses the following limitations  or
restrictions on the Paragraph 4.2.A warranty (if none, so state):
NONE.

4.3   The  warranties  recited in Paragraphs  4.1  and  4.2
expressly  exclude a franchise agreement executed on January 1986
between  Seller  and a single real estate office  having  single
place  of business in San Diego County, California,  known as RE
San  Carlos  Associates,  and a franchise agreement executed  on
November 17,  1986 between Seller and a single real estate office
having a single place of business located in Las Vegas,  Nevada,
known  as RE Las Vegas Associates.  Copies of documentation · of
these  franchise agreements are to be attached to  the  executed
version of this Agreement as Exhibits B and C.   Exhibit B and  C



define the territories granted to RE San Carlos Associated and RE
Las Vegas Associates.  Further, the territory of the office
exclusively reserved to seller as RE Clairemont shall be defined
as the area within the city limits of the city of San Diego, Ca.
bounded on the north by Hiway 52, on the west by Hiway 5, on the
south by Hiway 8 and on the east by Hiway 163 from Hiway 8 to
Hiway 805 then by 805 up to 52.

## V. ROYALTIES, REPORTS AND PAYMENTS

5.1  In consideration of the Section III grant of exclusive
rights, Assignments of existing contracts, and the Section IV
warranties, Buyer agrees to pay to Seller a royalty of $100.00
per month per active REALTY EXECUTIVES office located outside the
State of Arizona (hereinafter "Monthly Royalty Units" or "MRU'S")
Each single franchisee, subfranchisee, or separatre office using
the mark REALTY EXECUTIVES OR RE EXECUTIVES shall be
counted as one MRU.  A bona fide temporary office or a tract
sales office shall not be considered an MRU.

Any new MRU will be royalty free for the first 90 days of
operation.  excepting current Execu*System converts.

5.2  Buyer agrees to transmit written reports to Seller
every month within five business days after the end of each
preceding month (e.g. January report and payments due March 5).
Each report shall state the number of MRU's accruing during the
preceding month.  Concurrently with each report, Buyer shall
remit the royalty owed to Seller computed by multiplying the
number of MRU's by one-hundred dollars ($100.00).   Payments
received later than five (5) days after due will be subject to a
six percent (6%) late charge which shall be paid promptly by
buyer upon receipt of invoice.

5.3  Beginning with the first full month following the
effective date of this Agreement. buyer shall within five (5)
business days following the end of each preceding month mail a
One Thousand Dollar ($1,000.00) minimum monthly payment to
Seller.  Beginning with the thirteenth full month following the
effective date of this Agreement. the minimum shall be increased
to Two Thousand Dollars ($2,000.00) per month.  Beginning with
the twentyfifth full month following the effective date of this
Agreement. the minimum shall be increased to Three Thousand
Dollars ($3,000.00).  Then all minumum monthly payments shall be
credited and offset against Paragraph 5 Royalty Payments.  All
sums received by Buyer from RE San Carlos and RE Las Vegas shall
be passed through to Seller with out deduction from or to Buyer
for the first two (2) years of this agreement.  At the beginning
of the third (3) year, all fees from RE San Carlos and RE Las
Vegas shall remain with the buyer.

In any event the money paid to the Seller from the combined
payments of the royalty fee plus the passthru fees of RE San
Carlos and RE Las Vegas shall not exceed the sum of Three
Thousand Dollars ($3,000.00) per month for the first two (2)
years.  Buyer agrees to provide standard services to RE San
Carlos and RE Las Vegas upon effective date of this contract.
Seller will assist RE Clairemont Associates as well as

4



San Carlos Associates and RE Las Vegas Associates as soon as possible to conformity with the standard franchisee program including rebating to RE San Carlos Associates and RE Las Vegas Associates up to fifty percent (50%) of its payments otherwise due in the first two months after effective date of this Agreement.

5.4   Seller's president or an independent Certified Public Accountant shall have the right to inspect Buyer's franchise Agreements to verify the number of MRU's and the accuracy of the Paragraph 5.2 reports.   Such inspections shall be made during business hours and at Buyer's place of business.

5.5   The books and records including books of accounts and receipts relating to franchise payments and computation of MRU's and royalties may be audited annually by an independent certified public accountant at Seller's option.   If the audit report verifies the accuracy of the MRU computations and royalty payments, all costs of audit shall be at Seller's expense.   If the audit report finds that MRU's or royalty payments have been understated by ten percent (10%) or more, costs of the audit shall be at Buyer's expense and shall be promptly reimbursed to Seller upon presentation of the auditor's billing statement, including all fees and expenses of the audit.   Any deficiencies reported by the auditor shall be paid within sixty days (60) following the audit.

5.6   If Buyer fails to remit a payment in a timely manner or if Seller disputes the amount of any payment, Seller shall provide written notice to Buyer specifying such payment deficiency.   After reciept of such notice, Buyer shall have sixty (60) days to either explain or cure such payment deficiency without breaching this Agreement, or within the sixty (60) days submit the dispute to Arbitration for prompt resolution only as to the disputed portion.   During any period of pending Arbitration, the undisputed royalty payments shall continue without delay or offset.

## VI.   RELATIONSHIP BETWEEN LICENSOR AND LICENSEE

6.1   During the effective term of this Agreement, the parties acknowledge that Seller will continue to operate its real estate brokerage services office known as RE Clairemont Associates within the Clairemont territory of San Diego County without obligation to Buyer as a national franchisor for any franchise fees, payments, or contributions, but Seller shall endeavor to operate its real estate brokerage service in



conformance as fully as possible with the operating guidelines and uniform procedures developed for its franchisees.

6.2   Seller shall change the corporation name to something other than REALTY EXECUTIVES and to be approved by the Buyer.  In the event the Seller transfers 50% or more ownership in the Clairemont operation, it shall become an MRU and will pay normal monthly fees to Buyer.  Clairemont will not be obligated to pay an Originating franchise fee in this event.

6.3   The grant of rights to buyer under this Agreement shall be exclusive, and seller shall not franchise or consent to the use of the marks by any other firm or person during the effective term of this Agreement.  However, in the event of a sale of the real estate brokerage business known as RE Clairemont by the Seller,  Buyer agrees that a qualified buyer of the business shall be entitled to operate as a franchisee without payment of any initial franchise fees or signup fees, but buyer shall be subject to ongoing monthly franchise fees on the same terms as the franchisees of buyer.

6.4   Buyer shall review regularly the competitive activity within the real estate brokerage services industry and franchising industry and agrees to inform Seller promptly of any possible infringement of or unfair competition affecting the service marks which comes to the attention of the Buyer.  In the event such infringements or unfair competition come to the attention of Buyer, Buyer shall promptly take such action as is commercially and legally reasonable to enforce the service marks. Seller agrees to assist Buyer in whatever manner buyer may direct at the expense of Buyer in such enforcement action.  Recovery of damages resulting from any such action shall be shared by Buyer and Seller in proportion to the actual damages imposed on Seller and Buyer.

6.5   Should either party be involved as defendant in judicial action under the trademark law or with regard to an act of unfair competition concerning use of the marks, the parties agree to cooperate with each other to the greatest possible extent in such defense.  Any liability of Seller in such action shall be limited to the amount of Buyer fees due to Seller from Buyer under this agreement.

6.6   Buyer agrees during the term of this Agreement not to disparage, disclaim, or attack the validity of any of the service marks.

6.7   Buyer shall be entitled at its expense to record this exclusive Agreement of sale in the Patent and Trademark Office of



the United States and to record, announce, and publicize in any
way it sees fit the existence of this exclusive agreement, at the
expense of Buyer.

## VII.  TERMINATION

7.1  The grant of exclusive rights under this Agreement
shall be perpetual so long as the terms of this Agreement
including provisions for royalty payments are complied with by
Buyer, and so long as the terms of this Agreement including
royalties payments are complied with, the grant of exclusive
rights shall be irrevocable by Seller.

7.2  If royalties that have become due remain unpaid for a
period of longer than thirty (30) days, Seller shall notify Buyer
of intent to terminate this Agreement, and Buyer shall have sixty
(60) days after receipt of such notice to cure the payment
deficiency, and if not so cured, the rights granted hereunder
shall terminate.

## VIII.  CONTROLLING LAW; ENTIRE AGREEMENT; HEADINGS

8.1  All questions relating to the validity,
interpretation, performance or enforcement of this Agreement
shall be determined as far as possible by reference to the laws
of the United States including specifically the Lanham Act.  Any
disputes about the computation or reduction of royalty rates and
royalty payments shall be referred to a panel of three
arbitrators experienced in trademark licensing matters under the
then prevailing rules of the American Arbitration Association.
Any other disputes about performance of the terms of this
Agreement or termination of this Agreement shall be referred to
the Federal Courts of the United States.

8.2  This Agreement constitutes the entire agreement between
the parties and supercedes any prior agreements, whether oral or
written.

8.3  The headings used in this Agreement are for purposes of
convenient reference only and shall not be used to construe or
modify the terms written in the text of this instrument.

8.4  In the event either party institutes litigation to
resolve a dispute arising under the terms of this Agreement, the
party prevailing in such litigation shall be entitled to have its

reasonable attorney's fees and costs paid for by the other party.

IN WITNESS WHEREOF each of the parties has caused this Agreement to be executed in four originals by Seller's and by Buyer's duly authorized representatives.

SELLER:
REALTY EXECUTIVES, INC.


Signature
By: Jere B. Horsley
Corporate Officer President
Date: 3/1/67

BUYER:
EXECU*SYSTEMS, INC.


SIGNATURE
By: Richard A. Rector
Corporate Officer President
Date 3/15/67

5074D01.218.2

# EXHIBIT B



## SETTLEMENT AGREEMENT

1.  **Parties and Date.**  This Settlement Agreement is by and between JBH INVESTMENTS, INC., a California corporation, formerly Realty Executives, Inc. ("JBH" hereafter in this Agreement), as Plaintiff and Counterdefendant in Federal Civil Action 92-0240 NAJ (POR) (hereinafter "Lawsuit") and EXECU\*SYSTEMS, INC., an Arizona corporation, and REALTY EXECUTIVES INTERNATIONAL, INC., an Arizona corporation, Defendants and Counterclaimants (collectively "REI").

    All of the terms and conditions of this Settlement Agreement shall be effective starting on June 28, 1996 and thereafter.

2.  **Purpose and Subject.**  The purposes of this Agreement are:

    (a)    to finally and completely settle, compromise and release all claims and causes of action in the Lawsuit, and all other claims, disputes and proceedings now existing between the parties, and

    (b)    to clarify and amend the contract between the parties titled "Agreement for Sale of Service Marks" dated effective April 1, 1987 (the "Contract"), in order to prevent further disputes regarding the terms and performance of the Contract and establish cooperation between the parties to their mutual benefit.  A true and correct copy of the Contract is attached hereto as Exhibit "A".

3.  **Initial Payment, Release, Waiver, Dismissal and Vacating of Judgment.**  REI shall arrange for the release of the sum of $200,000, currently being held in the Trust Account of Snell & Wilmer, L.L.P., to JBH upon the execution of this Settlement Agreement should such execution occur on or before June 28, 1996, and shall pay to JBH the additional sum of Thirty Thousand Dollars ($30,000), without interest, either in a lump sum payment or installments, at any time REI elects, provided such payment is made in full on or before January 1, 2000.  In further consideration of this Settlement Agreement, the Lawsuit, all others claims, disputes, the pending arbitration before the American Arbitration Association ("Arbitration") and any other matters in controversy shall be dismissed with prejudice and all claims and counterclaims released and waived without offset from the beginning of time to the date of the execution of this Settlement Agreement.  In addition, all judgments entered in the Lawsuit shall be vacated and of no further force and effect except as set forth in section 5(e) below.  In all such proceedings, to the date of execution of this Settlement Agreement, both parties shall bear their own attorneys' fees and costs including those specifically awarded to JBH by the judgment in the Lawsuit.

    In consideration of this Settlement Agreement, and except for any rights or duties to be performed hereunder, and/or the Contract, as clarified and amended herein, JBH on the one hand and REI on the other, do hereby release and forever discharge each other and their respective affiliates, assigns, officers, directors, shareholders, agents,

attorneys, heirs, representatives, predecessors and successors from any and all claims, demands, debts, liabilities, obligations, accounts, reckonings, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected, direct or derivative, which they, or any of them, ever had, or now has or may have in the future against each other so that as of the date hereof, except for those rights or duties to be performed hereunder, and/or the Contract, as clarified and amended herein, neither party shall have any claim of any kind or nature whatsoever on or against the other, directly or indirectly, on any contract or account (express or implied in fact or implied in law) or on any supposed liability or thing or act undertaken, done or omitted to be done, at any time prior to the date hereof. This release specifically includes and specifically bars, but is not limited to, any action, claim or counterclaim in the Lawsuit and the Arbitration.

It is the intention of each of the parties that the execution of this covenant shall be effective as a full and final resolution of each and every claim which either party previously had, or now has, against the other party, as well as the parties' agents, employees, officers, shareholders, directors, and attorneys, related to the transactions which are the subject matter of the claims and counterclaims in the Lawsuit and the Arbitration, whether said claim is known or unknown. Each of the parties acknowledge that said party has been advised by said parties' attorneys concerning this Settlement Agreement and that said party is familiar with and waives the provisions of Section 1542 of the California Civil Code which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each party to this Settlement Agreement understands and acknowledges that the other party to this Settlement Agreement may hereafter discover facts in addition to or different from those which are now known or believed to be true with respect to the subject matter of this Settlement Agreement.

4. <u>Indemnity</u>. REI agrees to indemnify and hold JBH harmless from any claim by Coopers & Lybrand, Certified Public Accountants, for accounting or auditing services concerning claims for royalty payments asserted by JBH in the Lawsuit. This indemnity and hold harmless running from REI to JBH is intended to include all claims by Coopers & Lybrand for accounting and auditing services and any costs associated therewith arising out of or in any way related to the Lawsuit or the Contract. REI shall be solely responsible for defense of claims brought by Coopers & Lybrand against either JBH or REI, or both, and shall choose and pay for attorneys for said defense, and pay all attorneys' fees, costs and expenses of said defense. JBH shall have the right to retain its own attorney in addition to any attorneys provided by REI for the limited purposes of attending depositions and advising on discovery matters, and REI shall reimburse JBH

promptly for all attorneys' fees and costs reasonably incurred by JBH for such independent counsel. In the event of a dispute regarding the amount of attorneys' fees and costs that REI shall be required to pay to JBH for its independent counsel, the matter shall be resolved in the manner set forth in the provisions of subparagraph 5(d). REI shall be solely authorized and responsible for defending, compromising, negotiating and for the payment of any settlements or judgments entered in favor of Coopers & Lybrand against JBH, and REI shall retain any proceeds or recovery from Coopers & Lybrand. Notwithstanding the foregoing, REI shall not be authorized to enter into any agreement with Coopers & Lybrand that might affect JBH without first obtaining the written consent of JBH or its independent counsel. JBH agrees to cooperate with REI in defending the claims asserted by Coopers & Lybrand and to provide documents reasonably necessary in that regard. JBH shall maintain a cooperative posture in any such proceeding, and JBH shall refrain from direct negotiations or discussions with Coopers & Lybrand and shall give written notice to REI of any opportunity that JBH has to negotiate or discuss the Coopers & Lybrand claim with Coopers & Lybrand, or its counsel, and REI shall have the opportunity to participate in all such negotiations and discussions. Notwithstanding the foregoing, in the event that a request is made by REI of JBH regarding the Coopers & Lybrand matter, JBH shall have the right to be reimbursed for any out-of-pocket expenses incurred by JBH resulting from any such cooperation or production of documents. JBH represents and warrants that it has not, to the date of this Settlement Agreement, entered into any binding agreements with Coopers & Lybrand. In the event that JBH has any notes or memoranda regarding previous discussions with Coopers & Lybrand regarding this matter, JBH shall make copies available to REI. Notwithstanding the foregoing or any language in this Settlement Agreement to the contrary, JBH shall, at all times, be open and truthful in the testimony given by its agents and employees and JBH shall obey all lawful Court Orders regarding same. REI acknowledges and affirms that JBH may be required to present evidence which is favorable to Coopers & Lybrand and detrimental to REI.

5.   Amendment of Agreement for Sale of Service Marks (Contract). JBH and REI agree that the Contract shall be amended and modified as follows:

(a)   Except as otherwise provided for in this subparagraph 5(a), monthly MRU payments from REI to JBH pursuant to paragraph 5.1 of the Contract shall be Twenty-Five Thousand Dollars ($25,000) per month commencing July 1, 1996 through December 31, 1996, and shall be Thirty Thousand Dollars ($30,000) per month commencing January 1, 1997 through June 30, 1997, and shall be Thirty-Five Thousand Dollars ($35,000) per month commencing July 1, 1997 through December 31, 1998. The monthly payments will be adjusted annually commencing January 1, 1999 and continuing annually thereafter by taking the monthly payment for December of the prior year and increasing the same by the percentage increase, if any, in the prior year's Consumer Price Index up to 4%. If, by reason of such annual adjustment, the monthly payment ever reaches or would exceed $50,000, then the monthly MRU payment shall remain fixed at the amount of Fifty Thousand Dollars ($50,000) thereafter.

(b)    All of the terms and conditions of the Contract, as modified by this Settlement Agreement, concerning accounting, reporting by REI, JBH's right to audit, and all of the provisions of the Contract, as amended by this Settlement Agreement, pertaining to the calculation of MRU payments and the rights granted to JBH to inspect franchise agreements or other documents shall be and are voided and of no further force and effect. The provisions of the Contract which shall be and are voided by this Settlement Agreement are Paragraphs 5.1, 5.2, 5.3, 5.4 and 5.5 of the Contract.

(c)    The parties agree that monthly payments hereunder shall be made by direct bank deposit to JBH Investments, Inc.'s account at Union Bank, 7770 Clairemont Mesa Bl., San Diego, CA 92111, Routing #122000496, Acct. #0260011103, or such other depository as JBH designates in writing. Payments not deposited by the end of the tenth (10th) day of the month when due are late and a 6% late penalty shall be added.

(d)    All disputes arising out of or relating to the Contract as modified by this Settlement Agreement, shall be deemed to require binding arbitration in accordance with the then-pertaining rules of the American Arbitration Association without provision for appeal or removal. The parties to this Settlement Agreement hereby waive any and all right to seek the interpretation or construction of the Contract and this Settlement Agreement or to collect damages for any claimed breach of the Contract or Settlement Agreement in any State or Federal Court as the same will be referred to arbitration herein. The arbitration shall consist of a three member panel, and the venue for the arbitration shall be placed in San Diego, California as the site of making the Contract. In any such arbitration proceeding, the party adjudged to be the prevailing party shall be entitled to an award of attorneys' fees and taxable costs from the other party. The determination of which party is the prevailing party shall be made by the arbitration panel and, in that event, the award of fees and costs shall be mandatory. The arbitration panel may, however, determine that there is no prevailing party in which case each of the parties would pay and bear their own attorneys' fees and taxable costs. In any arbitration proceeding the parties shall be entitled to reasonable and necessary discovery in accordance with the provisions of California Code of Civil Procedure Section 1283.05.

(e)    The parties agree that the following provisions of the Court's Order Re: Plaintiff and Defendants' Cross-Motions for Partial Summary Judgment, entered in the Lawsuit on or about November 17, 1993, shall survive the termination of the Lawsuit and are hereby incorporated into this Settlement Agreement in full:

      i)    "Specifically, the court finds, for the reasons stated by the court on the record, that paragraph 7.1 of the subject agreement constitutes a valid condition subsequent and if this condition is triggered, then the agreement may be terminated pursuant to section 7." (Order, ¶ 3)

      ii)    "The court specifically finds, for the reasons stated on the record, that the Plaintiff is not a franchisee of the Defendant." (Order, ¶ 12)

6.   <u>Good Faith and Fair Dealing</u>.  Each party acknowledges a duty to the other of good faith and fair dealing in all business dealings between them, including questions of performance of the Contract, as modified by this Settlement Agreement.  Each party further acknowledges a duty not to take any action and to refrain from any action that would hinder or damage the contractual relationship between the parties or the reputation or business opportunities of the other; provided, however, that each party retain all rights to freedom of contract and business judgment that any other business operating in the jurisdictions in which the parties operate would have.

REI represents and warrants as an expression of good faith that there are no present intentions, plans or prospects to merge, sell or transfer the U.S. operations of REI or engage in a course of action intended to defeat JBH's rights under the Contract, as modified by this Settlement Agreement.  Nothing contained in this paragraph 6 shall ever be construed or interpreted as a restriction or bar on REI's right to merge, sell or transfer its United States operation or otherwise or to place any restriction upon REI's right to operate its business as it deems appropriate after the execution of this Settlement Agreement, including, but not limited to, negotiations or decisions concerning any sale, merger or acquisition.

JBH represents and warrants as an expression of good faith that JBH has no present intention, plan or prospect to engage in a course of action intended to defeat REI's rights under the Contract, as modified by this Settlement Agreement.

7.   <u>Clairemont Territory</u>.  The controversy between the parties concerning the extent of JBH's rights in the Clairemont Territory as defined in the Contract, as modified by this Settlement Agreement, is further clarified and resolved as follows:  REI shall use its best efforts to locate a suitable franchisee to purchase the franchise rights in the Clairemont Territory for their fair market value.  In the event the new franchisee qualifies as such and undertakes all of the obligations of a new franchisee of REI in accordance with the franchise agreement and franchise circular then in effect for that jurisdiction, then REI shall pay JBH, as JBH's sole compensation in connection with that transaction, an amount equal to the Initial Franchise Fee received by REI.  REI shall have the sole discretion to determine whether or not a potential franchisee is suitable for the Clairemont Territory.  REI shall not, however, unreasonably withhold its consent regarding a franchisee for the Clairemont Territory and shall, at all times, treat potential franchisees for the Clairemont Territory the same as it treats potential new franchisees for the rest of the United States of America.  REI shall provide JBH with all documents and other assistance in order to find such a suitable franchisee to the same extent that REI would supply documents and assistance to any of its franchisees.  JBH and REI mutually agree to obey all laws, statutes, rules and regulations of the United States of America, the State of California and the locality in which the Clairemont Territory is located and to cooperate with each other in that regard.  The parties further agree that the provisions of this paragraph 7 shall apply only to the initial sale of JBH's franchise

(b)     <u>Severability</u>.  If any provision of this Agreement is declared void or unenforceable, such provision shall be deemed severed from this Agreement, which shall otherwise remain in full force and effect.

(c)     <u>Additional Acts and Documents</u>.  Each party hereto agrees to do all such things and take all such actions, and to make, execute and deliver such other documents and instruments, as shall be reasonably requested to carry out the provisions, intent and purpose of this Agreement.

(d)     <u>Authority</u>.  Each of the parties hereto represents and warrants to each other that this Agreement has been duly authorized by all necessary action, that this Agreement constitutes and will constitute a binding obligation of each such party, and that this Agreement has been (and each instrument delivered hereunder, when so delivered, will have been) duly and validly executed on behalf of such party.

(e)     <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors in interest and assigns, but in no event shall any party be relieved of its obligations hereunder without the express written consent of each other party.

(f)     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, all such counterparts shall be deemed to constitute one and the same instrument, and each of said counterparts shall be deemed an original hereof. The parties acknowledge that receipt of a signature received by fax shall be a binding counterpart signature to this Agreement.

(g)     <u>Time</u>.  Time is of the essence of this Agreement and each and every provision hereof.  Any extension of time granted for the performance of any duty under this Agreement shall not be considered an extension of time for the performance of any other duty under this Agreement.

(h)     <u>Waiver</u>.  Failure of any party to exercise any right or option arising out of a breach of this Agreement shall not be deemed a waiver of any right or option with respect to any subsequent or different breach, or the continuance of any existing breach.

(i)     <u>Captions</u>.  Captions and paragraph headings used herein are for convenience only and are not a part of this Agreement and shall not be deemed to limit or alter any provision hereof and shall not be deemed relevant in construing this Agreement.

(j)     <u>Interpretations</u>.  To the extent permitted by the context in which used, (i) words in the singular number shall include the plural, words in the masculine

gender shall include the feminine the neuter, and vice versa, and (ii) references to "persons" or "parties" in this Agreement shall be deemed to refer to natural persons, corporations, general partnerships, limited partnerships, trusts and all other entities.

(k)     Specific Performance.   In addition to such other remedies as may be available under applicable law, the parties acknowledge that the remedies of specific performance and/or injunctive relief shall be available and proper in the event any party fails or refuses to perform its duties hereunder.   Any requests for specific performance or equitable or injunctive relief made in the context of an arbitration proceeding shall be referred for that purpose only to the United States District Court for the Southern District of California.

(l)     Exhibits.   Any Exhibit attached hereto shall be deemed to have been incorporated herein by this reference, with the same force and effect as if fully set forth in the body hereof.

(m)     Representations and Warranties.   The parties acknowledge that, in entering into this Settlement Agreement, JBH has relied on representations of REI that the financial condition of REI is accurately reflected in the financial statements included in REI's current Uniform Franchise Offering Circular.

(n)     Assignment.   JBH shall be permitted to assign any or all of its benefits under this agreement but not its obligations.

IN WITNESS WHEREOF, the parties agree to each and all provisions of this Settlement Agreement by the signatures of their authorized representatives below.   The parties acknowledge that receipt of a signature received by fax shall be a binding counterpart to this Agreement.

JBH   INVESTMENTS,   INC., a   California corporation (JBH), formerly Realty Executives, Inc., Plaintiff and Counterdefendant,

7/1/94

(Date)

By: _____
Jere B. Horsley, President

(Signatures continued on next page.)

REALTY EXECUTIVES INTERNATIONAL, INC., an Arizona corporation (REI), as Defendant and Counterclaimant,

_____ 6/27/96
(Date)

By: _____
Its: _____

EXECU*SYSTEMS, INC., an Arizona corporation,

_____ 6/27/96
(Date)

By: _____
Its: _____

## ATTORNEY CERTIFICATION

The undersigned, counsel to the parties hereto, hereby confirm that they have represented their clients in the negotiation and preparation of this Agreement and that they approve the form and content of this Agreement.

SNELL & WILMER L.L.P.

6/27/96
(Date)

By: _____
Attorneys for REALTY EXECUTIVES INTERNATIONAL, INC. and EXECU*SYSTEMS, INC. ("REI")

ARTHUR F. HOLZ, ATTORNEY

7/1/96
(Date)

By: _____
Attorney for JBH INVESTMENTS, INC. ("JBH")

# EXHIBIT C

*[handwritten note at top right:] To REI/Horsley From Steve Horsley Re 2nd amendment*

This SECOND AMENDMENT TO AGREEMENT FOR SALE OF SERVICE MARKS, dated as of April 11, 2011 (this "Amendment"), is made by and between JBH INVESTMENTS, INC., a California corporation, formerly Realty Executives, Inc. (together with its successors and assigns, "JBH"), and EXECU*SYSTEMS, INC., an Arizona corporation, and REALTY EXECUTIVES INTERNATIONAL, INC., an Arizona corporation (together with their successors and assigns, collectively "REI").

## RECITALS

WHEREAS, JBH and REI are parties to a certain "Agreement for Sale of Service Marks" dated effective April 1, 1987 (the "Contract"), as amended, in part, by a certain "Settlement Agreement" between JBH and REI dated effective June 28, 1996 (the "Settlement Agreement");

WHEREAS, the Contract and Settlement Agreement required certain monthly payments from REI to JBH as set forth in detail therein; and

WHEREAS, because of REI's ~~professed~~ *(SH)* financial distress, JBH agreed to accept, on a one time basis only, a Promissory Note dated effective **4 | 11 | 2011** (the "Note", a copy *(SH)* of which is attached hereto as Exhibit "A") which provides for the repayment of certain monthly payments past due and owing pursuant to those terms and conditions set forth therein.

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises, agreements, representations, warranties and covenants contained in the Contract, the Settlement Agreement, the Note, and herein, including but not limited to REI's assurances to JBH that the basis of the Promissory Note was due to unprecedented events, leading to REI's financial distress, and will not be a recurring event, the sufficiency of which is hereby acknowledged, JBH and REI desire and agree to amend subparagraph 5(c) of the Settlement Agreement which originally amended, in part, subparagraph 5.2 of the Contract, as follows:

## AGREEMENT

1.  Subsection 5(c) of the Settlement Agreement. Subsection 5(c) of the Settlement Agreement originally amending, in part, subparagraph 5.2 of the Contract is hereby amended and restated as follows:

> (c)     The parties agree that monthly payments hereunder shall be made by direct deposit to JBH Investments, Inc.'s account at Union Bank, 7770 Clairemont Mesa Bl., San Diego CA 92111, Routing #122000496, Acct. #0260011103, or such other depository as JBH designates in writing. Payments not deposited by the end of the tenth (10th) day of the month when due are late and a 10% late penalty shall be added.

2. <u>Severability</u>. If any provision of this Agreement is declared void or unenforceable, such provision shall be deemed severed from this Agreement, which shall otherwise remain in full force and effect.

3. <u>Authority</u>. Each of the parties hereto represents and warrants to each other that this Amendment has been duly authorized by all necessary action, that this Amendment constitutes and will constitute a binding obligation of each such party, and that this Amendment has been duly and validly executed on behalf of such party.

4. <u>Successors and Assigns</u>. This Amendment, like the Settlement Agreement, the Contract and the Note, shall be binding upon and inure to the benefit of the parties hereto, and their respective successors in interest and assigns, but in no event shall any party be relieved of its obligations hereunder or thereunder without the express written consent of each other party.

5. <u>Waiver</u>. Failure of any party to exercise any right or option arising out of this Amendment or a breach thereof shall not be deemed a waiver of any right or option with respect to any subsequent or different breach, or the continuance of any existing breach.

6. <u>Effectiveness</u>. Except as otherwise set forth above, all terms and conditions of the Settlement Agreement, the Contract and the Note shall remain unchanged and in full force and effect in their entirety.

7. <u>Counterparts</u>. This Amendment may be executed in any number of counterparts, and all such counterparts shall be deemed to constitute one and the same instrument, and each of said counterparts shall be deemed an original hereof. The parties acknowledge that receipt of a signature received by fax shall be a binding counterpart signature to this Amendment.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties agree to each and all provisions of this Amendment by the signatures of their authorized representatives below as of the date first above written.

JBH INVESTMENTS, INC., a California corporation,

By:

Name: Jere B. Horsley

Title: President

REALTY EXECUTIVES INTERNATIONAL, INC., an Arizona corporation,

By:

Name: RICHARD A. RECTOR, PRESIDENT

Title: PRESIDENT

EXECU*SYSTEMS, INC., an Arizona corporation,

By:

Name: RICHARD A. RECTOR, PRESIDENT

Title: PRESIDENT

EXHIBIT "A"
Promissory Note

# EXHIBIT D



# EASTMAN & McCARTNEY LLP

| 401 West A Street, Suite 1785 | GARY L. EASTMAN, Esq. | 924 Truxtun Avenue |
| San Diego, California 92101 | Registered Patent Attorney | Bakersfield, California 93301 |
| Telephone (619) 230-1144 | | Telephone (661) 334-1800 |
| Facsimile (619) 230-1194 | gary@eastmanmccartney.com | Facsimile (661) 334-8016 |

August 20, 2014

VIA U.S. MAIL and E- MAIL  dtedesco@tnch.com  and  rrector@realtyexecutives.com

Cert. No. 7011 1570 0002 8698 4168
David C. Tedesco
Realty Executives International, Inc.
8324 E. Hartford Drive, Suite 100
Scottsdale, Arizona 85255

7011 1570 0002 8698 4151
Realty Executives International, Inc.
C/O Capitol Corporate Services, Inc.
815 North 1st Street, #100
Phoenix, Arizona 85020

7011 1570 0002 8698 3956
Richard A. Rector
EXECU*SYSTEMS, Inc.
4427 North 36th Street
Phoenix, Arizona 85018

7011 1570 0002 8698 2199
Execu*Systems, Inc.
C/O Capitol Corporate Services, Inc.
815 North 1st Street, #100
Phoenix, Arizona 85020

Re:   **REVISED NOTICE OF BREACH OF REALTY EXECUTIVES TRADEMARK
LICENSE**

Dear Mr. Tedesco and Mr. Rector:

In my previous Notice letter to you dated August 12, 2014, I misstated the late penalty due on the unpaid royalty. Specifically, the Second Amendment To Agreement for Sale of Service Marks dated April 11, 2011, modified subsection 5 (c) of the Settlement Agreement to include a ten percent (10%) late penalty if Realty Executives International, Inc. ("REI") fails to make payment on or before the tenth (10th) day of the month.

The payment has not yet been received, and thus, is late. Consequently, in accordance with the revised Paragraph 5(c), the current payment amount is Fifty Five Thousand Dollars ($55,000).

Very truly yours,

Gary L. Eastman, Esq.

GLE

# EXHIBIT E

**Joanne Carson**

| | |
|---|---|
| **From:** | David C. Tedesco <dtedesco@tnch.com> |
| **Sent:** | Wednesday, August 13, 2014 9:43 AM |
| **To:** | joanne@eastmanmccartney.com; Andrew Christensen |
| **Cc:** | gary@eastmanmccartney.com; Jere Friedman |
| **Subject:** | Re: Notice of Breach of Realty Executives Trademark License |

Hi Gary, Jere and Joanne,

Thank you for the letter. The mechanism involved in terminating the agreement involves 90 days of non-payment. Given the lack of response thus far from Mr. Horsley (nearly a month without responding), we felt it best to get the clock ticking in the event we don't reach an alternative arrangement.

As a side note, you continue to refer to the agreement as a license when it is clearly a conditional assignment. REI is the current owner of the marks - see the USPTO filings as well as the agreements themselves.

As I've been continuously communicating, we believe the best course of action is an alternative arrangement. We've tried to communicate the situation, the company's condition and alternative arrangements that would work multiple times. Absent that, we'll be left with the expensive process of sorting out what these agreements mean legally and, in the event those findings are not acceptable to REI, a transition to new marks - as the existing situation cannot continue. I think fighting over the existing agreement results in a lose/lose when there is a win/win opportunity here. But I don't know what else we can do on our side to bring that to fruition. That ball is in your court.

Dave


Sent from Surface

**From:** Joanne Carson
**Sent:** Wednesday, August 13, 2014 9:16 AM
**To:** David Tedesco
**Cc:** gary@eastmanmccartney.com

Please see attached correspondence.

Sincerely,

_____
Joanne Carson
Litigation Support



EASTMAN & McCARTNEY LLP
Intellectual Property Matters
401 West A Street, Suite 1785

1

# EXHIBIT F



**DAVID C. TEDESCO**
Executive Chairman

July 11, 2014

Dear Mr. Horsley,

Per you request, we are writing to formally notify you of the change of control at Realty Executives International, Inc.  In April of 2014, the majority, controlling interest in Realty Executive International, Inc. was acquired by an investment entity controlled by Mr. David Tedesco.  Mr. Tedesco now wields legal control of Realty Executives International, Inc.  During the course of the transaction, Realty Executives International, Inc. was represented by the Arizona-based law firm Snell and Wilmer.  Mr. Tedesco's investment group was represented by True North's in-house legal counsel Andrew Christensen.  Either legal party can be contacted to provide further confirmation of the transaction.  If you would like to come to Arizona and meet with Mr. Tedesco in person at REI's headquarters in Scottsdale, you are more than welcome to do so.

Between this letter, the news coverage about True North's acquisition of the majority of REI and the offer to speak with legal counsel or meet with us in person at the company, we believe you have ample evidence that the transaction has occurred and Mr. Tedesco is now the controlling party.

Sincerely,

David C. Tedesco                                            Richard Rector

# EXHIBIT G

1  JOHN M. MORRIS, ESQ./State Bar No. 09975
   HIGGS, FLETCHER & MACK LLP
2  401 West "A" Street, Suite 2000
   San Diego, California 92101
3  (619) 236-1551

4

5  Attorneys for Plaintiff/Counterdefendant
   Realty Executives, Inc.
6

7

8                 UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11  REALTY EXECUTIVES, INC., a          CASE NO. 92-0240-NAJ
    California corporation,,
12                                      STIPULATION TO DISMISS APPEAL
                         Plaintiff,     AND TO AMEND AND RESTATE
13                                      JUDGMENT AND ORDERS IN LIGHT
    v.                                  OF SETTLEMENT; ORDER AND
14                                      JUDGMENT THEREON
    EXECU*SYSTEMS, INC., an Arizona
15  corporation,                        (Assigned to the Honorable
                                        Napoleon A. Jones)
16                         Defendant.

17

18  EXECU*SYSTEMS, INC., an Arizona
    corporation; and REALTY
19  EXECUTIVES INTERNATIONAL, INC.,
    an Arizona corporation .its
20  successor-in-interest, as

21         Counterclaimants,

22  v.

23  REALTY EXECUTIVES, INC., a
    California corporation,
24
           Counterdefendant
25

26

27      Defendant and counterclaimant, Execu*Systems, Inc., and

28  counterclaimant, Realty Executives International, Inc.,

79492

400

FILED

AUG 1 2 1996

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

1  (collectively "Execu*Systems") through their attorney of record,

2  and plaintiff and counterdefendant, Realty Executives, Inc.,

3  through its attorney of record, hereby stipulate:

4       1.   The appeal filed June 21, 1996, by Execu*Systems may be

5  dismissed.

6       2.   The following order and judgment may be vacated: "

7            a.   The judgment, entered April 8, 1996; and

8            b.   Order on Post-Trial Motions filed May 23, 1996.

9       3.   The Order re:  Plaintiff and Defendants' Cross-Motions

10 for Partial Summary Judgment, entered on or about November 17,

11 1993, may be vacated, except that the following paragraphs of that

12 Order shall survive and are hereby made final orders of the Court:

13           a.   "Specifically, the court finds for the reasons
                  stated by the court on the record, that
14                paragraph 7.1 of the subject agreement
                  constitutes a valid condition subsequent and if
15                this condition is triggered, then the agreement
                  may be terminated pursuant to section 7."
16                (Order, ¶3).

17           b.   "The court specifically finds, for the reasons
                  stated on the record, that the Plaintiff is not
18                a franchisee of the Defendant."  (Order, ¶ 12).

19      4.   Other than as specified in paragraph 3, the entire

20 action, including the complaint and counterclaim, be dismissed

21 with prejudice and a Judgment of Dismissal in the form as that

22 attached hereto shall be entered.

23      This court has jurisdiction to dismiss the appeal under Rule

24 42(a) of the Federal Rules of Appellate Procedure ("FRAP") because

25 the appeal has not yet been docketed in the Ninth Circuit.  See

26 FRAP rules 3(d), 12(a), 42(a).

27      This court should vacate the judgment and orders specified

28 above, subject to the preservation of certain specific provisions,

79492                                          2

1 and dismiss the action because that is a material and essential

2 consideration to implement the settlement the parties have

3 reached, and vacating the judgment and orders and dismissing the

4 action will not adversely affect the rights of third parties.

5 Under the settlement, the Agreement for Sale of Service Marks

6 between the parties has been rewritten to substitute fixed monthly

7 payments in place of royalties based on MRU's, which led to the

8 dispute. In addition, plaintiff is receiving a substantial down

9 payment upon entry into the settlement agreement. Vacating the

10 judgment and the specified orders and dismissing the action is a

11 material inducement to Execu*Systems to enter into the settlement

12 because the amount of the judgment would have had a material

13 adverse effect on Execu*Systems's financial statements and the

14 effect of the existing judgment's monetary obligations would

15 impair its ability to obtain new franchisees. Since plaintiff has

16 an indirect stake in the success of Execu*Systems, the parties

17 recognized the need to reach their settlement agreement to benefit

18 both sides. In turn, therefore, vacating the judgment and orders

19 and dismissing the action will help ensure that plaintiff receives

20 the substantial monthly payments called for by the settlement

21 agreement, and plaintiff fully supports the request to vacate the

22 judgment and orders and to dismiss the action. Finally, vacating

23 the judgment and orders and dismissing the action will not impair

24 the rights of any third parties or future franchisees because

25 neither the judgment nor the orders calls into question the rights

26 of Execu*Systems in its trade names. Thus, vacating the judgment

27 is not being requested to attempt to avoid adverse precedent.

28

1       In fact, the precedent plaintiff wishes to preserve is
2   specifically being reserved and retained in effect.
3       If this court believes a hearing on this stipulation would be
4   appropriate, the parties stand ready to appear before the ~~curt~~ court at
5   its convenience.           _TPS  KAO_

6
7   DATED: _AUGUST 2, 1996_   SNELL & WILMER L.L.P.

8
9                             _Richard A Der_
                              Richard A. Derevan
10

11
12  DATED: _8/5/96_           HIGGS, FLETCHER & MACK LLP

13
14                            By: _John M. Morris by Thomas P Sayer_,
                              John M. Morris
15

16                                    ORDER
17

18  **Good cause appearing**, it is hereby ordered that:
19      1.  The appeal filed June 21, 1996, by Execu*Systems be
20  dismissed.
21      2.  The following order and judgment be vacated:
22          a.  The judgment, entered April 8, 1996; and
23          b.  Order on Post-Trial Motions filed May 23, 1996.
24      3.  The Order re: Plaintiff and Defendants' Cross-Motions
25  for Partial Summary Judgment, entered on or about November 17,
26  1993, may be vacated, except that the following paragraphs of that
27  Order shall survive and are hereby made final orders of the Court:
28